# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Thomas J. Harris, Wanda O. Harris, individually and in their representative capacities, ) ) ) ) Plaintiffs, ) ) v. ) ) Sand Canyon Corporation, f/k/a Option One Mortgage Corporation, ) ) ) Defendant. ) ) | Civil Action No.: 2:08-CV-3692-PMD **ORDER** |

This action arises out of the adjustable rate mortgage Plaintiffs Thomas J. Harris and Wanda O. Harris received from Defendant Sand Canyon Corporation f/k/a Option One Mortgage Corporation after refinancing their primary residence. Before the court is Defendant's motion for partial summary judgment and Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. Based on the following, the court grants in part and denies in part Defendant's motion for partial summary judgment and denies Plaintiffs' motion for class certification.

## BACKGROUND

Plaintiffs purchased their residence in North Charleston, South Carolina in 1997, and on June 5, 2006, they refinanced their home mortgage loan through Defendant by executing a mortgage and adjustable rate note in the principal amount of $127,500 (the "Loan"). The Loan had an initial interest rate of 11.8% and a 30 year term. The interest rate remained at 11.8% for the first two years, but adjusted every six months thereafter for the remainder of the term of the Loan. Prior to the refinancing, Defendant alleges it provided Plaintiffs with a Good Faith Estimate of their Settlement Costs on or around May 8, 2006, although, in their complaint, Plaintiffs claim they received this

documentation after the closing of the Loan transaction. At the execution of the Loan, Defendant had Plaintiffs sign the following documents: (1) an Adjustable Rate Mortgage Loan Disclosure; (2) a Summary of Terms of Loan; (3) a Truth in Lending Disclosure Statement; (4) a HUD-1 Settlement Statement; (5) an Itemization of Amount Financed; (6) a Notice of Right to Cancel; and (7) a Broker Compensation and Fees Disclosure. Plaintiffs eventually defaulted on the Loan, after which they executed a Loan Modification Agreement with Defendant on August 16, 2007. Plaintiffs again defaulted on the Loan in December of 2007, and ultimately filed this class action lawsuit on October 1, 2008, alleging that Defendants engaged in a fraudulent scheme to systematically lure unwary borrowers to enter into 'subprime' mortgages and loans . . . through a variety of fraudulent means, for the sole purpose of maximizing Defendants' own profitability and without any regard for the financial consequences to the borrower." (Compl. ¶ 7.) In their complaint, Plaintiffs assert six causes of action against Defendant, and Defendant now moves the court to grant it judgment as a matter of law on three of Plaintiffs' causes of action.

## ANALYSIS

**I.**    **Defendant's Motion for Partial Summary Judgment**

    **A.**    **Legal Standard for Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c)(2). The judge is not to weigh the evidence but, rather, must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by

2

summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### B. Truth in Lending Act Claim

In their second cause of action, Plaintiffs allege that "[i]n the course of [their] consumer transaction, Defendant[], upon information and belief, failed to deliver all 'material' disclosures required by TILA, [the Truth in Lending Act], and [the] Real Estate Settlement Procedures Act ("RESPA") . . . prior to the loan transaction . . . [or] . . . in writing upon application for the loan or, at the latest, three (3) days subsequent to the lenders receipt of the loan application." (Compl. ¶ 52(a)– (b).) Plaintiffs also allege that Defendant may have violated TILA by "(i) under-disclosing the finance charge and APR; (ii) failing to provide two copies of the notice of right to rescind and an accurate date for the expiration of the rescission period; [and] (iii) failing to disclose properly and accurately the number, amount and due dates or period of payments scheduled to repay the obligations." (Id. ¶ 53.) Because of these alleged violations, Plaintiffs seek to invoke their rights to rescind the loan transaction and to recover damages from Defendant. *See* 15 U.S.C. §§ 1635, 1640.

3

With respect to Plaintiffs' action to recover damages, Defendant contends that Plaintiffs filed their claim after the expiration of TILA's one year statute of limitation. Title 15 U.S.C. § 1640(e) states that "any action [for damages] may be brought in any United States district court . . . within one year from the date of the occurrence of the violation . . . ." Defendant asserts that the statute of limitations on Plaintiffs' claim for damages under TILA began to run on June 5, 2006, the date the Loan transaction was closed, and therefore expired on June 5, 2007. *See Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006) ("If the violation is one of disclosure in a closed-end credit transaction, 'the date of the occurrence of the violation is no later than the date the plaintiff enters the loan agreement.') (quoting *Smith v. Am. Fin. Sys.*, 737 F.2d 1549, 1552 (11th Cir. 1984)). Because Plaintiffs did not file their complaint until October 1, 2008, Defendant asks the court to grant it summary judgment as to this claim.

In response, Plaintiffs argue that the statute of limitations should be equitably tolled based on an argument that Defendant fraudulently concealed facts that are the basis of their claim. Though there is no controlling circuit precedent regarding whether TILA is subject to the doctrine of equitable tolling when a plaintiff alleges fraudulent concealment, other federal courts have held that the statute of limitations period in TILA is subject to equitable tolling. *See, e.g.*, *Ellis v. GMAC*, 160 F.3d 703, 708 (11th Cir. 1998); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 501–03 (3d. Cir. 1998); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984). Pursuant to the fraudulent concealment tolling doctrine, "when the fraud has been concealed or is of such a character as to conceal itself, and the plaintiff is not negligent or guilty of laches, the limitations period does not begin to run until the plaintiff discovers the fraud." *Supermarket of Marlinton v. Meadow Gold Dairies.*, 71 F.3d 119, 122 (4th Cir. 1995) (applying the doctrine in an antitrust suit).

Accordingly, in the Fourth Circuit, to invoke this doctrine as a basis for equitable tolling, Plaintiffs must show: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of [Plaintiffs'] claim, and (2) [Plaintiffs] failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.* In order to satisfy the first element of the fraudulent concealment doctrine, Plaintiffs must present evidence of "affirmative acts of concealment" by Defendant. *Id.* at 126. Those acts, however, need not be separate and apart from the acts of concealment involved in the TILA violation. *See id.* With respect to the due diligence requirement, "it is possible for a plaintiff to satisfy that element without demonstrating that it engaged in any specific inquiry. *Id.* at 128. If Plaintiffs establish that they were not or should not have been made aware of facts that would have led them to conduct a further inquiry, then there is nothing to provoke inquiry. *See id.* Moreover, if reasonable further inquiry would not have revealed the basis for the claim, the Plaintiffs' claim is not time-barred. *See id.*

Plaintiffs argue that Defendant's alleged failure to disclose all material information relating to their adjustable rate mortgage is, "by its very nature," concealing. They claim they did not know or understand the terms or effects of the Loan until the first adjustment date of July 16, 2008, after which they "discover[ed] the issues with the adjustable rate mortgage," and filed this suit. Thus, it appears that Plaintiffs ask the court to find the statute of limitations tolled based on their general allegations that Defendant failed to disclose material information to them concerning their adjustable rate mortgage. After considering the parties' arguments, the court finds that the statute of limitations on Plaintiffs TILA claim for damages has run and that Plaintiffs have failed to show they are entitled to the benefit of equitable tolling. Here, because Plaintiffs did not file their complaint until October 1, 2008, 15 U.S.C. § 1640(e)'s one year statute of limitations bars their statutory damages claim

against Defendant for failing to make material disclosures. Plaintiffs' loan closed on June 5, 2006, constituting the consummation of the transaction and, accordingly, the date of the alleged violation. Therefore, the statute of limitations expired on June 5, 2007, and the circumstances here do not justify equitable tolling.

As Defendant points out, Plaintiffs did not plead with particularity a plausible argument for fraudulent concealment in their complaint, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), Fed. R. Civ. P. 9(b), but waited until its response in opposition to Defendant's motion for summary judgment to first make this claim. Moreover, besides their allegations that Defendant committed TILA disclosure violations, Plaintiffs have not presented any evidence upon which this court can conclude that there was any affirmative act of fraudulent concealment committed by Defendant that would have prevented Plaintiffs from discovering their claim. While affirmative acts of concealment by Defendant need not be separate and apart from the acts of concealment involved in the TILA violation, Plaintiffs' reliance on general allegations that Defendant failed to provide them with material information required to be disclosed under TILA fails to show that Defendant took active steps to prevent Plaintiffs from suing it on time. In addition to the mortgage and adjustable rate note signed by Plaintiffs on June 5, 2006 to effectuate the Loan, which explains the terms of adjustable rate mortgage, Defendant provided the court with copies of the following documents, which also appear to have been received and signed by both Plaintiffs on the same day: an adjustable rate mortgage loan disclosure; a summary of the terms of the loan; a truth in lending disclosure statement; a HUD-1 settlement statement; an itemization of the amount financed; a notice of the right to cancel; and a broker compensation and fees disclosure. Based on their receipt of these documents, the court finds that Plaintiffs could have discovered the basis for this claim at least a

year before the filing of their complaint and that their argument for equitable tolling fails as a matter of law. Therefore, the court grants Defendant's motion for summary judgment as to Plaintiffs' TILA claims for damages.

### C. The Real Estate Settlement Procedures Act Claim

Also in their second cause of action, Plaintiffs appear to assert a claim under the Real Estate Settlement Procedures Act. As noted above, Plaintiffs allege that because the transaction at issue was a "federally related mortgage loan" within the meaning of sections 3 and 8 of the Real Estate Settlement Procedures Act ("RESPA"), Defendant was required to disclose certain material information to them prior to the commission of the loan transaction, yet Defendant failed to deliver or properly inform Plaintiffs of this information.[1] (Compl. ¶¶ 51–52.) Plaintiffs also appear to allege a deficiency with the Good Faith Estimate of Settlement Costs disclosure, as they claim to have received an unsigned copy of this document "at their request after closing" on the Loan, and it stated the Loan amount as $126,000 with an estimated interest rate of 10.850%. (Compl. ¶ 21.) Defendant moves the court to grant it summary judgment because it believes RESPA does not provide Plaintiffs with a private right of action against it for this specific claim. Plaintiffs do not oppose Defendant's motion.

Pursuant to 12 U.S.C. § 2604, lenders are required to provide borrowers with information booklets, which must include the following information: (1) a description and explanation of the

---

[1]Although Plaintiffs complain of Defendant's failure to provide or properly disclose material information required under RESPA, in their complaint, Plaintiffs cite section 8 of the Act, 15 U.S.C. § 2607, which prohibits a person from giving or accepting kickbacks or unearned fees as part of a transaction involving a federally related mortgage loan. Because Plaintiffs do not make any allegations regarding kickbacks or unearned fees in their complaint, the court believes this citation is an inadvertent mistake and construes Plaintiffs' complaint as alleging a cause of action under 15 U.S.C. § 2604, which requires the distribution of special information booklets to help borrowers better understand the nature and costs of real estate settlement services.

nature and purpose of each cost involved in the real estate settlement; (2) an explanation and sample of the standard real estate settlement form developed under § 2603; (3) a description and explanation of the nature and purpose of escrow accounts when used in connection with loans secured by residential real estate; (4) an explanation of the choices available to buyers of residential real estate in selecting persons to provide necessary services incident to a real estate settlement; and (5) an explanation of the unfair practices and unreasonable or unnecessary charges to be avoided by the prospective buyer with respect to a real estate settlement. With the booklet, each lender shall also provide "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement," 12 U.S.C. § 2604(c), and all of this information must be provided to loan applicants within three days after receipt of the application. *Id.* § 2604(d).

Defendant acknowledges that the Fourth Circuit has yet to determine whether RESPA provides a private right of action for failure to comply with its disclosure provisions, but it cites to numerous other circuits which have concluded that Congress did not intend to create a private right of action in such an instance. For example, in *Collins v. FMHA-USDA*, the Eleventh Circuit upheld a district court's dismissal of a plaintiff's RESPA claim pursuant to 12 U.S.C. § 2604(c) because it found that neither the statute nor the legislative history revealed a congressional intent to create a private cause of action for a violation of that Code section. *Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997). In doing so, the court made the following analysis:

> Collins contends that the district court erred in finding that there exists no implied private civil remedy for violations of the RESPA, specifically 12 U.S.C. § 2604(c). That statutory provision requires each lender to provide the borrower with a 'good faith estimate' of the amount or range of charges for specific settlement services the borrower is likely to incur. That provision does not, however, explicitly

8

> authorize a private remedy. The question is whether it implicitly provides for a private civil remedy.
>
> In determining whether a federal statute implicitly creates a private remedy, a court should inquire: (1) whether the statute was created for the plaintiff's special benefit, (2) whether there is any indication of legislative intent to create a private remedy, (3) whether a private remedy would be consistent with the legislative purpose, and (4) whether the area is so traditionally relegated to the states that it would be inappropriate to infer a cause of action based solely upon federal law. *Cort v. Ash*, 422 U.S. 66, 78 (1975). Because the ultimate question is one of legislative intent, the most significant of these factors is whether there is any indication of congressional intent to create a private remedy. *See, e.g., Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16 (1979).
>
> The present § 2604(c) replaced the prior § 2605, which had explicitly provided an action for damages for its violation. Pub.L. No. 93-533 § 6, 88 Stat. 1726 (1974), repealed by Pub.L. No. 94-205 § 5, 89 Stat. 1158 (1976). That Congress eliminated the provision when it amended the statute strongly suggests Congress intended that there no longer be a private damages remedy for violation of § 2604(c). Moreover, several other provisions of RESPA still explicitly provide private civil remedies, *see, e.g.*, 12 U.S.C. §§ 2605(f), 2607(d)(2) and (5), 2608(b). That, too, indicates Congress did not intend such a remedy for § 2604(c) violations. *See also State of Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1301-02 (5th Cir.1995) (finding no implied cause of action under 12 U.S.C. § 2609).
>
> Where, as here, neither the statute nor the legislative history reveals a congressional intent to create a private cause of action, and actually indicate that Congress intended not to provide such a remedy, we need not carry the *Cort v. Ash* inquiry further. *See Dime Coal Co., Inc. v. Combs*, 796 F.2d 394, 399 (11th Cir.1986). Accordingly, we hold that the district court did not err in dismissing Collins' RESPA claim, because there is no private civil action for a violation of 12 U.S.C. § 2604(c), or any regulations relating to it.

*Id.* at 1367-68. Although the Fourth Circuit has not addressed this issue, other district courts in this circuit have followed the reasoning of *Collins* and found that § 2604 of RESPA does not provide a private cause of action. *See, e.g.*, *Faulkner v. Onewest Bank*, No. 10-12, 2010 U.S. Dist. LEXIS 59688, at *19 (N.D. W. Va. June 16, 2010 ) ("RESPA, however, provides no private right of action for violations of section 2604.") (following *Collins*); *Rush v. Am. Home Mortg., Inc.*, No. 07-854, 2010 U.S. Dist. LEXIS 33630, at *22 (April 6, 2010 D. Md.) (following *Collins* to find that RESPA

9

does not create a private right of action for violations of §§ 2603–04). After considering Defendant's argument and the fact that Plaintiffs did not oppose it, this court also finds that RESPA does not create a private right of action for the violation of its disclosure provisions and grants Defendant's motion for summary judgment as to this claim.

### D. Civil Conspiracy Cause of Action

Next, Defendant moves the court to grant it summary judgment with respect to Plaintiffs' claim that Defendant conspired with H & R Block, Inc. and American Home Mortgage Servicing, Inc., "along with mortgage brokers they affiliated with," . . . "to cover up and misrepresent the terms of consumer loan products for the purpose of injuring [them] and Class Members." (Compl. ¶ 74.) In *Hackworth v. Greywood at Hammett, LLC*, the South Carolina Court of Appeals stated the following with respect to the tort of civil conspiracy:

> The tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. *Vaught v. Waites*, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct. App. 1989). The difference between civil and criminal conspiracy is in criminal conspiracy, the gravamen of the offense is the agreement itself, whereas in civil conspiracy, the gravamen of the tort is the damage resulting to plaintiff from an overt act done pursuant to a common design. *Id.*; *see also Pye v. Estate of Fox*, 369 S.C. 555, 567-68, 633 S.E.2d 505, 511 (2006) ("The gravamen of the tort of civil conspiracy is the damage resulting to the plaintiff from an overt act done pursuant to the combination, not the agreement or combination per se.").
>
> A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint. *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 293, 278 S.E.2d 607, 611 (1981) *rev'd on other grounds*, 283 S.C. 155, 321 S.E.2d 602 (1984) *quashed in part on other grounds*, 287 S.C. 190, 336 S.E.2d 472 (1985). Moreover, because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action. *Vaught*, 300 S.C. at 209, 387 S.E.2d at 95.

385 S.C. 110, 115, 682 S.E.2d 871, 874 (Ct. App. 2009). Defendant asserts that Plaintiffs' civil conspiracy cause of action fails as a matter of law because they merely reallege the acts that support their negligent misrepresentation cause of action. The only allegation in Plaintiffs' complaint related to the civil conspiracy cause of action states, as mentioned above, that Defendant "combined" with H & R Block, Inc. and American Home Mortgage Servicing, Inc., "along with mortgage brokers they affiliated with . . . to cover up and misrepresent the terms of consumer loan products for the purpose of injuring [them] and Class Members." (Compl. ¶ 74.) Defendant argues that his bare allegation of misrepresentation mirrors the following allegations asserted by Plaintiffs in their negligent misrepresentation cause of action:

> 66. Defendants, upon information and belief, made false representations and misleading representations to the Plaintiffs and Class Members regarding the actual terms of the loan transactions, the impact of the interest rate, their compliance with state and federal law, that they were dealing in good faith, that all charges and rates imposed incident to the closing were fair and reasonable, that the adjustable rate mortgage was acceptable product and that Plaintiffs and other similarly situated would be able to repay the loan under the terms as written.
>
> 67. In the course and conduct of offering and extending credit, Defendants misrepresented, expressly or by implication, the effect that adjustments in the interest rate on its ARM loans would impose, how the interest rate would be imposed and that over the course of the loan, the interest rate can be lower than the initial rate.

(Compl. ¶¶ 66–67.) According to Defendant, these allegations of misrepresentation are no different than the single allegation underlying the civil conspiracy cause of action, and because South Carolina law requires a plaintiff to "allege additional acts in furtherance of a conspiracy rather than reallge other claims within the complaint," *Hackworth*, 385 S.C. at 115, 682 S.E.2d at 874, it believes it is entitled to summary judgment. In addition to this argument, Defendant contends that even if Plaintiffs have sufficiently alleged a civil conspiracy cause of action, Plaintiffs have not come forward with anything more than bare allegations of a conspiracy to misrepresent the terms

of the loan. It claims that the evidence that has been presented supports the conclusion that Plaintiffs were provided with ample documentation to enable them to understand the terms of the Loan.

In response, Plaintiffs acknowledge that the allegations relating to the negligent misrepresentation claim are similar to the claim for civil conspiracy, but argues that they are not identical. Plaintiffs claim that their complaint also alleges:

> Defendant has been found to have disregarded underwriting standards, created incentives for loan officers and brokers to disregard the interests of the borrowers and steer them into high cost loans and originated thousands of loans they knew or should have known the borrowers would be unable to pay, all in an effort to increase loan origination volume as to profit from the practice of packaging and selling the vast majority of the Defendant's residential subprime loans to the secondary market. These loans were designed not for long term viability, but for short-term financing, and brokers and agents routinely promised that borrowers could refinance before the loan became unaffordable when the introductory rate expired.

(Resp. in opp. at 6.) While it is true that Plaintiffs' complaint does make this allegation, this language is quoted from a pleading in a suit brought by the Attorney General for the Commonwealth of Massachusetts against Defendant in that state. And even if the court were able to distinguish Plaintiffs' negligent misrepresentation claim from their civil conspiracy claim, based on this quoted language, Plaintiffs have not produced any evidence that Defendant conspired with another party to misrepresent the terms of the Loan for the purpose of injuring them. Under South Carolina law, Plaintiffs must prove additional acts in furtherance of a conspiracy, and they have failed to produce any evidence to create an issue as to this matter. Moreover, the damages alleged in a civil conspiracy action must go beyond the damages alleged in other causes of action, which is not the case here. Therefore, the court grants Defendants' motion for summary judgment as to Plaintiffs' civil conspiracy claim.

### E. South Carolina Unfair Trade Practices Act Cause of Action

In their third cause of action, Plaintiffs allege that Defendant violated the South Carolina Unfair Trade Practices Act by engaging in "unfair, misleading or deceptive acts or practices in the conduct of its trade or commerce," by "failing to properly disclose the terms of the loan transaction; steering Plaintiffs and Class Members into higher interest rate loans to increase their profit; . . . and making loans without consideration of the consumers' ability to repay the loan or mortgage," among other things. Defendant asks the court to grant it summary judgment as to this claim because class action suits are forbidden under the Act. The relevant portion of SCUTPA provides:

> Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, *but not in a representative capacity*, to recover actual damages.

S.C. Code Ann. § 39-5-140(a) (1976) (emphasis added). It seems clear from the language of SCUTPA that class action suits are forbidden under the Act, and the South Carolina Supreme Court has held as such. *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009); *see also Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 423 (4th Cir. 2003). Plaintiffs agree that they are prohibited from bringing their Unfair Trade Practices Act claim in a representative capacity, but contend that the cause of action should remain a part of their suit if the court does not grant their motion for class certification. Because, as explained below, the court does denies Plaintiffs' motion for class certification in this case, it denies Defendant's motion for summary judgment as to this claim.

## II. Plaintiffs' Motion for Class Certification

Plaintiffs move the court to certify a putative class comprised of "persons who, on or from 2002 until the date of Class Certification, that [sic] obtained a subprime loan issued by Option One secured by real property located in the State of South Carolina." (Pls.' Mot. for Class Certification at 1.) Federal Rule of Civil Procedure 23(a) provides that one or more members of a class may sue as representative parties on behalf of all only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Every class action must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation, with "the final three requirements of [the rule] 'tend[ing] to merge,' [so that] commonality and typicality '[serve] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) and *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, n.13 (1982)).

In addition to satisfying the conditions enumerated in Rule 23(a), Plaintiffs must also demonstrate that the putative class satisfies one of the three subparts of Rule 23(b). In this case, Plaintiffs invoke subsection (b)(3), which permits a class action if

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of

members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). Plaintiffs carry the burden of establishing each of these requirements for a class action. *See, e.g.*, *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) ("[I]t is the plaintiff who bears the burden of showing that the class *does comply* with Rule 23.") (emphasis in original). At this stage, the class representatives need not establish their case on the merits, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974), *Stastny v. Southern Bell Tel. & Tel. Co.*, 628 F.2d 267, 275 (4th Cir. 1980); nevertheless, some preliminary inquiry into the merits may be necessary for an intelligent determination of whether to certify the class. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312–13 (4th Cir. 1978). Questions regarding the certification of a class action are left to the sound discretion of the district court, and any such decision by the court will only be reversed upon a showing of abuse of that discretion. *Stott v. Haworth*, 916 F.2d 134, 139 (4th Cir. 1990).

Before analyzing Rule 23's prerequisites, the court clarifies which of the named Plaintiffs' claims are remaining for consideration in support of their motion for class certification. As discussed above, the court has already granted Defendant's motion for partial summary judgment with respect to Plaintiff's claim for damages under TILA, as well as their claims for civil conspiracy and those under the Real Estate Settlement Procedure Act. Moreover, the court has found, and Plaintiffs agree, that their claim pursuant to the South Carolina Unfair Trade Practices Act may not be pursued in a class action. Therefore, for purposes of the motion for class certification, the named Plaintiffs' remaining claims include (1) a claim for rescission under TILA; (2) a claim for negligent

misrepresentation; (3) a claim that the terms of the Loan were unconscionable; and (4) a claim for declaratory and injunctive relief. After considering the present state of this lawsuit, along with the parties' briefs and their accompanying evidence, the court finds that the named Plaintiffs have not met their burden of proving they are typical of the class as required by Federal Rule of Civil Procedure 23(a)(3), nor have they proven that they can fairly and adequately represent the absentee class members as required by Rule 23(a)(4). Therefore, the court denies Plaintiffs' motion for class certification.

Rule 23(a)(3) requires the representative's claim be typical of the class as a whole. The United States Supreme Court "has repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998) (internal citation omitted). Essentially, the typicality requirement ensures that "only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." *Id.* at 340. The typicality requirement is met if a plaintiff's "claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 99 (M.D.N.C. 1993).

In this case, the crux of the putative's class complaint is that Defendant "had [P]laintiffs and others enter into consumer transactions without providing adequate information or disclosures required to properly inform the consumer of the terms of the ARMs and subjecting them to risky loans and the loss of their homes." (Pls.' Mot. for Class Cert. at 1.) Yet, as discussed above, the court has rendered judgement in favor of Defendant as a matter of law with respect to the named Plaintiffs' claim that Defendant is liable for damages because it failed to make material disclosures

to them regarding their Loan, as required by TILA. It did so because the statute of limitations applicable to Plaintiffs has run with respect to their claim, barring them from seeking damages pursuant to the Act. Because the court found that Plaintiffs are no longer able to pursue an action for damages pursuant to TILA due to circumstances unique to them, the court finds that their claim is no longer typical of the class, as they can no longer advance the same factual and legal arguments that presumably constitutes the crux of the absentee class members' cases. Although the named Plaintiffs' claim for rescission of the Loan under TILA is still viable,[2] "not all of the absent class members may want to seek a rescission of their loan because it requires returning the loan principal in exchange for the release of the lien and any interest or other payments." *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 574 (7th Cir. 2008) (holding that Truth in Lending Act claims for rescission may not, as a matter of law, be brought as a class action). The putative class, as defined, could consist of absent members who are not barred by the statute of limitations from seeking from Defendant actual or statutory damages available to them under TILA; therefore, the court finds that the named Plaintiffs' case is no longer typical of the class, nor would they fairly or adequately represent all of the absent class members.

---

[2] In regard to Plaintiffs' remaining claim for rescission, Defendant argues that TILA's rescission remedy may not be pursued on behalf of a class. To support its argument, it cites to a Seventh Circuit decision, a First Circuit decision, and a Fifth Circuit decision, all of which determined that claims for rescission cannot be pursued on a class-wide basis. *Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008) ; *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418 (1st Cir. 2007); *James v. Home Constr. Co. of Mobile, Inc.*, 621 F.2d 727 (5th Cir. 1980). Although the Fourth Circuit has yet to rule on this issue, at least one district court in this circuit has agreed with the decisions cited to by Defendant in finding that a plaintiff cannot assert a rescission claim on behalf of members of a putative class. *Nkengfack v. Homecomings Fin., LLC*, No. 08-2746, 2009 U.S. Dist. LEXIS 50792, at *12 (D. Md. June 15, 2009). Because the court believes it can deny Plaintiffs' motion for class certification on other grounds, it does so without ruling on this specific issue.

Also, the court agrees with Defendant in that the circumstances surrounding the named Plaintiffs' loan transaction, as well as their eventual defaults, make them subject to unique defenses which threaten to become the focus of the litigation. First, Plaintiffs' support their motion for class certification by arguing that Defendant consistently had the putative class members sign standard, pre-printed (1) mortgages, (2) adjustable rate notes, and (3) federal Truth in Lending disclosure statements, and it appears that Plaintiffs argue, based on these three documents, that Defendant "failed to clearly and conspicuously disclose how much and how soon the interest rate (and therefore, the monthly payment) would increase after the teaser rate expired;" "failed to clearly and conspicuously disclose whether stated monthly payments included amounts due for insurance and taxes . . .;" "failed to clearly and conspicuously disclose closing costs and fees;" and "failed to disclose the true costs and risks associated with the false promise that refinancing would be available as an exit strategy when the loans became unaffordable after the interest rate adjusted." (Pls.' Mot. for Class Cert. at 2.)

While it may be that certain members of the putative class only received a mortgage, an adjustable rate note, and a federal Truth in Lending disclosure statement, Defendant has offered evidence that the named Plaintiffs received much more than these three documents at the closing of their Loan. In addition to the mortgage, the adjustable rate note, and the Truth in Lending disclosure statement provided to Plaintiffs, Defendant has provided the court with a copy of an adjustable rate mortgage loan disclosure statement, a summary of the terms of Plaintiffs' Loan, a HUD-1 settlement statement, an itemization of the amount financed, a notice of Plaintiffs' right to cancel, and a broker compensation and fees disclosure statement, all of which were received and signed by Plaintiffs. Because Plaintiffs received these documents, which appear to contain quite a bit of the information

the motion for class certification alleges was not disclosed, the court finds that Plaintiffs' individual situation is not typical of other absent class members who may have only received the three documents discussed in the motion for class certification.

Furthermore, while the named Plaintiffs' complain in their negligent misrepresentation cause of action that Defendant "misrepresented, expressly or by implication, the effect that adjustments in the interest rate on its ARM loans would impose, how the interest rate would be imposed, and that over the course of the loan, the interest rate can be lower than the initial rate," it does not appear that Plaintiffs ever experienced an interest rate adjustment prior to defaulting on the Loan. As Defendant points out, Plaintiffs defaulted on the Loan twice, both times within two years from closing on the Loan and before the initial, or "teaser," interest rate increased. After their first default, Plaintiffs and Defendant entered into a loan modification agreement, which Plaintiffs also subsequently defaulted on. Because the named Plaintiffs never experienced an increase in their rate, their default had nothing to do with a rate reset, which makes them subject to arguments and defenses unique to other absent class members who complain of the effect that the rate increase had on their ability to afford their loans.

Also, with respect to Plaintiffs' claim that the terms of their Loan were unconscionable because they were entered into without consideration of the Plaintiffs' ability to repay the Loan, Defendant argues that Plaintiffs' financial situation is also too unique to make their claims typical of the class. Defendant has presented evidence, which has not been controverted by Plaintiffs, that the named Plaintiffs had severely impaired credit scores at the time the parties entered into the Loan, which was due, in part, to their prior bankruptcy filings in 1999, 2003, and 2005. (Def.'s Mem. in Opp. Ex. 1.) Because a determination of Plaintiffs' unconscionabiltiy claim would necessarily

include consideration of the circumstances surrounding the execution of the contract and the fairness of the contract as a whole, the court finds Plaintiffs' circumstances also make them subject to arguments and defenses unique to other absent class members.

Thus, based on the foregoing, the court finds the named Plaintiffs would inadequately fill the role of class representatives because their action involves a host of legal and factual issues unique to them that are likely to distract from their representation of the class and risk putting the claims of the other class members in jeopardy. *See Wiseman v. First Citizens Bank & Trust Co.*, 212 F.R.D. 482, 488 (W.D.N.C. 2003) ("While the representatives' claims must be typical of, they need not be identical to, the claims of the other class members. Further, if a putative class representative is subject to unique defenses that could become the focus of the litigation, then class certification is inappropriate.") (citations omitted); *see also Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993) ("[T]he typicality requirement overlaps with the adequacy requirement since it ensures that the absent class members will be adequately represented.") (citation omitted).

## CONCLUSION

Therefore, it is **ORDERED** that Defendant's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' motion for class certification is **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**July 22, 2010**
**Charleston, SC**

20